UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | | |
|---|---|---|
| MICHAEL GEORGE VALDEZ, #001429, | § | |
| | § | |
| vs. | § | NO:  MO:23-CV-00039-DC |
| | § | |
| MIKE GRIFFIS, EDDIE MANCHA, TAELOR | § | |
| WARNER, ANDREW LIGON, ROCKY | § | |
| BRIGHT, CINDY VELASQUEZ, ROBIN | § | |
| MCCULLOUGH, LORI HODKINS | § | |

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Before the Court are Plaintiff Michael George Valdez's Civil Rights Complaint filed pursuant to 42 U.S.C. §1983, and his Response to the Court's Order for More Definite Statement. [docket numbers 1, & 5, respectively]. On May 17, 2023, the defendants filed a Motion to Dismiss, which this Court construed as a Motion for Summary Judgment. [docket numbers 20, & 23, respectively]. On June 19, 2023, the defendants supplemented their Motion for Summary Judgment. [docket number 30]. Plaintiff never replied to the defendants' Motion for Summary Judgment nor asked for additional time to do so (and the time to reply has definitively passed), therefore, defendants' Motion is unopposed. [*See generally* docket]. At this point, the Court may grant the Motion for Summary Judgment as unopposed. *See* Local Rule CV-7(e). That said, the Court has fully considered this case. After due consideration, the Court grants the defendants' Motion for Summary Judgment. [docket numbers 20, & 30].

### I.    §1983 claims in general

Section 1983 creates a private right of action to redress the violation of federal law by those acting under color of state law. *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 82 (1984); *Middlesex Cty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 19 (1981); *Maine v. Thiboutot*, 448 U.S. 1, 4 (1980). It provides:

> Every person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State . . . subjects, or causes to be

> subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.

42 U.S.C. §1983. "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights conferred elsewhere.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)); *accord Graham v. Connor*, 490 U.S. 386, 393–94 (1989); *City of Okla. City v. Tuttle*, 471 U.S. 808, 816 (1985); *Young v. City of Killeen*, 775 F.2d 1349, 1352 (5th Cir. 1985); *Carbonell v. La. Dep't of Health & Human Resources*, 772 F.2d 185, 188 (5th Cir. 1985).

To prevail on a §1983 claim, Plaintiff must prove that a person acting under color of state law deprived him of a right secured by the Constitution or laws of the United States. *See* 42 U.S.C. §1983; *Daniels v. Williams*, 474 U.S. 327, 330 (1986); *Augustine v. Doe*, 740 F.2d 322, 324–25 (5th Cir. 1984). Plaintiff must support his claims with specific facts establishing a constitutional deprivation and may not simply rely on conclusory allegations. *See Schultea v. Wood*, 47 F.3d 1427, 1433 (5th Cir. 1995); *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990); *Jacquez v. Procunier*, 801 F.2d 789, 793 (5th Cir. 1986); *Angel v. City of Fairfield*, 793 F.2d 737, 739 (5th Cir. 1986); *Elliott v. Perez*, 751 F.2d 1472, 1482 (5th Cir. 1985).

Plaintiff must also prove that the alleged constitutional or statutory deprivation was intentional or due to deliberate indifference—not the result of mere negligence. *See Farmer v. Brennan*, 511 U.S. 825, 828–29 (1994); *Davidson v. Cannon*, 474 U.S. 344, 348 (1986); *Daniels*, 474 U.S. at 328; *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). The negligent deprivation of life, liberty, or property is not a constitutional violation. *See Campbell v. City of San Antonio*, 43 F.3d 973, 977 (5th Cir. 1995); *Fraire v. City of Arlington*, 957 F.2d 1268, 1276 (5th Cir. 1992); *Herrera v. Millsap*, 862 F.2d 1157, 1160 (5th Cir. 1989); *Simmons v. McElveen*, 846 F.2d 337, 339 (5th Cir. 1988); *Young*, 775 F.2d at 1353. Moreover, to hold a defendant liable under §1983, Plaintiff must adduce facts

2

establishing defendant's participation in the alleged wrong. *See Murphy v. Kellar*, 950 F.2d 290, 292 (5th Cir. 1992); *Jacquez*, 801 F.2d at 793.

## II.    *Pro se* **pleadings**

Allegations made in a *pro se* complaint are held "to a less stringent standard than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). To hold a *pro se* plaintiff to strict compliance "would be inequitable" as courts would punish a *pro se* plaintiff "for lacking the linguistic and analytical skills of a trained lawyer." *Perez v. United States*, 312 F.3d 191, 194–95 (5th Cir. 2002). To avoid such a result, "courts have adopted the rule that a *pro se* plaintiff's pleadings are liberally construed." *Id*.  Even though pleadings by a *pro se* litigant are held to a less stringent standard, courts must be able to draw the reasonable inference from the pleadings that defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007))). Courts should not dismiss a *pro se* complaint without "providing the plaintiff an opportunity to amend, unless it is obvious from the record that the plaintiff has pled his best case." *Hale*, 642 F.3d at 503. This Court finds that Plaintiff, having filed an original Complaint, and a Response to this Court's Order for a More Definite Statement, has pleaded his best case. [docket numbers 1, & 5, respectively].

## III.    **Summary judgment standard of review**

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is appropriate in any case where the critical evidence is so weak or tenuous on an essential fact that it could not support a judgment for the non-movant. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076 (5th Cir. 1994). That said, all evidence and the reasonable inferences to be drawn from them must be viewed in the light

most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party moving for summary judgment bears the initial burden of identifying those portions of the summary judgment evidence which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Where the non-moving party bears the burden of proof on a claim upon which summary judgment is sought, the moving party may discharge its summary judgment burden by showing that there is a lack of evidence to support the non-moving party's case. *Id.* at 325. Once the moving party has satisfied this burden, the non-moving party must go beyond the pleadings and by its own affidavits or by depositions, answers to interrogatories, and admissions on file, set forth specific facts showing a genuine issue for trial. *Id.* at 324; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256–57 (1986).

Hearsay, conclusory allegations, unsubstantiated assertions, and unsupported speculation are not competent summary judgment evidence. Fed. R. Civ. P. 56(e)(1); *see, e.g., Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996); *McIntosh v. Partridge*, 540 F.3d 315, 322 (5th Cir. 2008); *see also Little*, 37 F.3d at 1075 (noting that a non-movant's burden is "not satisfied with 'some metaphysical doubt as to the material facts'") (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

Summary judgment is mandated if the non-movant fails to make a showing sufficient to establish the existence of an element essential to their case on which they bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322; *Wenner v. Tex. Lottery Comm'n*, 123 F.3d 321, 324 (5th Cir. 1997). "In such a situation, there can be 'no genuine issue as to any material fact' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Id.* at 322–23. "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may...consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2).

The party opposing summary judgment must identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the non-movant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n. 7 (5th Cir. 1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the non-moving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322–23.

## IV.    Background facts

Plaintiff sued these Ector County Detention Center (ECDC) defendants alleging: (1) denials of access to religious materials, (2) mishandling of grievances, (3) denial of proper medical care/dental treatment, (4) lack of access to indigent supplies for mail, and (5) for the failure to properly supervise individual defendants. For relief, Plaintiff asks for a combined $41,000,000.00 from the ECDC defendants.

## V.    Denial of access to religious materials

On January 29, 2023, Plaintiff filed a grievance alleging a violation of his First Amendment rights when he was refused a Christian Bible, "as my religion requires me to read the holy bible on a daily basis." [docket number 30-11 at 10]. The very next day, defendant Warner responded that he could "request a bible from the chaplain." [*Id.*]. To which Plaintiff replied that he had missed days of reading the bible that the chaplain cannot make up. [*Id.*]. Defendant Warner again responded that the chaplain comes to the ECDC on Fridays, weather permitting. [*Id.*].

Just like the plaintiff in *Frank v. Terrell*, 858 F.2d 1090, 1090 (5th Cir. 1988) (clarification added), "[h]e does not assert that he is forbidden to possess and use these items in the exercise of his religious belief. Instead, he complains that the [ECDC] refuses to furnish the items, free of charge, for his use." That said, the ECDC need not furnish prisoners with religious materials. *See id.* at 1090–91. The First Amendment does not require that every religious group regardless of size be treated similarly. *See Baranowski v. Hart*, 486 F.3d 112, 123 (5th Cir. 2007), *cert. denied*, 552 U.S. 1062, 128 S.Ct. 707, 169 L.Ed.2d 553 (2007). Plaintiff failed to allege purposeful religious discrimination, and therefore has no basis for a claim. *Id.* Plaintiff was always free to obtain a Christian Bible on his own. "The pertinent question is not whether the inmates have been denied specific religious accommodations, but whether, more broadly, the prison affords the inmates opportunities to exercise their faith." *Freeman v. Tex. Dep't of Crim. Justice*, 369 F.3d 854, 862-63 (5th Cir. 2004).

"Recognizing a rational correlation between a prison's policy of not providing free materials for every religion and a legitimate governmental interest, [the Fifth Circuit] has held that there is 'no constitutional or legal requirement that the government provide materials for every religion and sect practiced in this diverse country.'" *Frank v. Terrell*, 858 F.2d 1090 (5th Cir. 1988) (quoting *Cruz v. Beto*, 405 U.S. 319, 323, 92 S.Ct. 1079, 31 L.Ed .2d 263 (1972) (Burger, C.J., concurring))." *Haynie v. Turnbo*, 996 F.2d 307 (5th Cir. 1993) (clarification added). *Accord Parker v. Coahoma County Sheriff's Dep't*, No. 2:07CV169, 2008 WL 1818524, at *1 (N.D. Miss. Apr. 21, 2008) ("A jail has no affirmative duty to provide inmates the religious text or other reading material of their choosing."); *and Mack v. Reynolds*, No. 7:97CV170R, 2000 WL 1808277, at *3 (N.D. Tex. Dec. 11, 2000) ("There is no legal or constitutional requirement that inmates be provided with religious materials at government expense."). Providing free religious materials for every religion could deplete prison resources and unduly burden prison officials. Thus, Plaintiff's allegation that his right to freedom of religion has been violated lacks a legal or factual basis and summary judgment is granted for the ECDC defendants as to this claim.

## VI.     Mishandling of grievances

To the extent Plaintiff complains that the ECDC defendants did not act on his grievances, a failure to respond to a letter or grievance does not rise to the required level of personal involvement for liability. *See Amir–Sharif v. Valdez*, No. 3:06-CV-2258-P, 2007 WL 1791266, at *2 (N.D. Tex. June 6, 2007) (holding that no liability under §1983 had been alleged because a failure to take corrective action in response to a grievance does not rise to the level of personal involvement); *Praylor v. Partridge*, No. 7-03-CV-247-BD, 2005 WL 1528690, at *2 (N.D. Tex. June 28, 2005) (same).

In complaining that the ECDC defendants failed to investigate or resolve his administrative grievances and appeals favorably or to his satisfaction, Plaintiff raises no viable §1983 claims. Prisoners have no constitutional right to the satisfactory investigation and resolution of prison grievances or administrative appeals. *See Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005). Nor do their disagreements with the factual content of the grievance and appeal responses give rise to a constitutional issue. Because Plaintiff here filed several grievances and appeals and receive responses from prison officials with written justification for their actions, he has not stated a due process claim for relief under §1983. *See Stauffer v. Gearhart*, 751 F.3d 574, 587 (5th Cir. 2014).

More importantly, Plaintiff does not have a constitutional right to have grievances resolved to his satisfaction. *See, e.g., Garrett v. Stephens*, 675 F. App'x 444, 447 (5th Cir. 2017) (citing *Geiger*, 404 F.3d at 374) (explaining that a prisoner "does not have a constitutional right to have grievances resolved in his favor or to have his claims reviewed per a grievance process that is responsive to his perceived injustices; thus, the denials of his grievances do not implicate his constitutional rights or give rise to a §1983 claim against [defendant]"); *Dugas v. Cain*, No. 09–0177–BAJ–CN, 2010 WL 4695313, at *5 (M.D. La. Oct. 20, 2010) ("any claim regarding the alleged failure of the defendants to properly address, investigate or respond to [prisoner's] complaints or administrative grievances regarding his medical care is without legal foundation"). The review and denial of a grievance,

without more, cannot form the required basis for personal involvement in an alleged constitutional violation, nor can it establish that the ECDC defendants created or enforced a policy that resulted in a constitutional deprivation.

For example, in *Garrett v. Sulser*, No. 6:17-CV-310, 2018 WL 1192996, at *5 (E.D. Tex. Mar. 7, 2018), a prisoner alleged that defendant's "refusal to 'properly investigate' these Step II medical grievances creates policies and procedures of deliberate indifference to his serious medical needs." The court rejected the prisoner's argument, explaining that a prisoner "cannot evade the holding in *Geiger* simply by casting his complaint regarding the denial of his medical grievances—or dissatisfaction with the outcome of his grievances—in the form of a claim of personal involvement by [defendant] through her failure to act on [prisoner's] grievances in a way that [he] believed appropriate." *Id.* The court further rejected prisoner's conclusory allegation that the defendant's denial of grievances showed a policy of deliberate indifference, noting that the prisoner had not articulated a specific policy defendant "created or enforced that resulted in a constitutional deprivation"; instead, the prisoner "simply point[ed] to the denial of his grievances as evidence of a custom or policy of deliberate indifference." *Id.*

Just as in *Garrett*, Plaintiff's conclusory allegations that defendants' denial of grievances evidenced both their personal involvement and a policy of deliberate indifference do not withstand pretrial screening. *See id.*; *see also Martinez v. Stephens*, No. H–16–0195, 2017 WL 607129, at *3 (S.D. Tex. Feb. 15, 2017) ("[t]he Fifth Circuit Court of Appeals has not held that the signing of a response to a grievance constitutes 'personal involvement' for purposes of section 1983"); *Whitlock v. Stephens*, No. 5:14-CV-94, 2016 WL 11474208, at *13 (E.D. Tex. Oct. 5, 2016) (rejecting prisoner's argument that defendants personally participated in illegal policy where "the fact [prisoner] wrote letters complaining about perceived violations does not give the recipients of these letters a constitutional duty to take the action Plaintiff believed appropriate"). Insofar as Plaintiff's

claims have to do with the treatment of his grievances, summary judgment is granted to the ECDC defendants.

### VII.    Denial of proper dental care/deliberate indifference/qualified immunity

Plaintiff claims he had a toothache, was provided medications for such, but at times missed the doses because he did not present himself to receive medications while defendant nurses were handing out the medications. Plaintiff claims occasional missed doses of medications used to treat his toothache. [docket number 5 at 2–3]. This is not enough to state a claim. An occasional missed dose, without more, is not deliberate indifference. *See Stockwell v. Kanan*, No. 11-10107, 442 F. App'x 911, 914 (5th Cir. Sept. 28, 2011) ("An occasional missed dose of medication does not, without more, constitute deliberate indifference") (citing *Mayweather v. Foti*, 958 F.2d 91 (5th Cir. 1992)).

A prison official's deliberate indifference to the serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment, whether the indifference is manifested by prison doctors or by prison guards. *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976); *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 754 (5th Cir. 2001). Still, because Plaintiff was a pretrial detainee and not a convicted inmate at the time of his encounter with defendants, Plaintiff's deliberate indifference claims arise from the alleged deprivation of substantive due process under the Fourteenth Amendment, not the Eighth Amendment. *See Gutierrez v. City of San Antonio*, 139 F.3d 441, 452 (5th Cir. 1998). Even so, the Fifth Circuit applies the same standard to constitutional claims of denial of medical care for pretrial detainees under the Fourteenth Amendment as it does to denial of medical care for convicted inmates under the Eighth Amendment. *Gibbs v. Grimmette*, 254 F.3d 545, 548 (5th Cir. 2001).

To prevail under the "extremely high standard" of deliberate indifference, a plaintiff "must show that the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino*, 239 F.3d at 756. A "serious medical need" is one for which

treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert v. Caldwell*, 463 F.3d 339, 345 n. 12 (5th Cir. 2006). "An incorrect diagnosis by [] medical personnel does not suffice to state a claim for deliberate indifference." *Domino*, 239 at 756. Further, "unsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference." *Id.* The decision to refuse additional or different treatment "is a classic example of a matter for medical judgment," rather than a basis for a deliberate indifference claim. *Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *Domino*, 239 F.3d at 756. It is well-established that "[u]nsuccessful medical treatment, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert*, 463 F.3d at 346 (citing *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995)).

According to the unrebutted medical records provided by the ECDC defendants, Plaintiff first complained of dental pain on January 29, 2023. [*See generally* docket number 30-8]. His gums were swollen, red, his tooth appeared to be loose, and he had an abscess. [*Id.*]. In February, defendant nurses provided him with Tylenol, then, in March, with an antibiotic and Tylenol. [*Id.*]. When he grieved the matter, he was informed by defendant McCullough that "[y]ou will be treated if there is an infection. You will receive medications for pain. However, if you want to see the dentist to have it pulled it will have to be paid for by someone from the outside." [docket number 30-11 at 12].

The Court cannot assume that the ECDC defendant nurses' actions, even if medically inappropriate, were anything more than simple negligence or malpractice—which, simply put, are deviations from standards of care not actionable under federal constitutional law in a §1983 lawsuit. *See, e.g., Nunley v. Mills*, 217 F. App'x 322, 324 (5th Cir. 2007) (holding that plaintiff's allegation that he was "prescribed the wrong medication" for his condition, "at best, ... has stated a claim of negligence, malpractice, or disagreement with treatment, which will not support a finding of deliberate indifference...."). Conduct classified as deliberately indifferent "must be more than mere or

even gross negligence" to establish a violation of a clearly established constitutional right. *Hare v. City of Corinth, Mississippi*, 74 F.3d 633, 645 (5th Cir. 1996) (en banc).

In other words, mere negligence by a governmental employee is not deliberate indifference. *Wilson v. Seiter*, 501 U.S. 294, 305 (1991); *see also Trevino v. Hinz*, 751 F. App'x 551, 554 (5th Cir. 2018) (per curiam) ("We doubt that Plaintiffs have alleged facts giving rise to deliberate indifference as to Officers Hauck and Hinz. Even read favorably to Plaintiffs, their allegations may depict negligence on the officers' part in not initially realizing the gravity of Trevino's condition and in not calling an ambulance sooner."). That is, a "[state actor] must have the subjective intent to cause harm." *Mace v. City of Palestine*, 333 F.3d 621, 626 (5th Cir. 2003) (citing *Wagner v. Bay City*, 227 F.3d 316, 324 (5th Cir. 2000)); *see generally Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006); *Hunt v. Pierson*, 730 F. App'x 210, 213 (5th Cir. 2018) (per curiam). "It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference." *Domino v. Texas Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001) (citing *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)); *see also Trevino*, 751 F. App'x at 555 ("[A]n officer's failure to immediately recognize ambiguous symptoms as a medical emergency does not amount to deliberate indifference.").

Rather, allegations of negligence or medical malpractice present issues of state law for state courts. *See Estelle v. Gamble*, 429 U.S. 97, 107 (1976); *Coleman v. Terrebonne Par. Crim. Justice Complex*, Civ. Action No. 13-4325, 2013 WL 6004051, at *4 (E.D. La. Nov. 13, 2013); *see also Gobert v. Caldwell*, 463 F.3d 339, 349 (5th Cir. 2006) ("[D]eliberate indifference exists wholly independent of an optimal standard of care.").

Deliberate indifference is not established when, as here, "medical records indicate that [the plaintiff] was afforded extensive medical care by prison officials[.]" *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). The nurses, being the ones treating his tooth ache rather than a dentist, does not change this calculus. "The treatment may not have been the best that money could buy, and

occasionally, a dose of medication may have been forgotten, but these deficiencies were minimal, they do not show an unreasonable standard of care, and they fall far short of establishing deliberate indifference by the prison authorities. Continuing [] pain is unpleasant. Its existence does not, however, in and of itself demonstrate that a constitutional violation occurred." *Mayweather v. Foti*, 958 F.2d 91, 91 (5th Cir. 1992) (clarification made). The defendant nurses were not deliberately indifferent in overseeing the treatment of Plaintiff's tooth ache as shown by the extensive and unrebutted medical records provided by the ECDC defendants. [*See generally* docket number 30-8 at 1–27].

The doctrine of qualified immunity applies to claims for monetary damages brought against a government official in his or her individual capacity. The Fifth Circuit has stated that a qualified immunity defense shields a Government official from civil liability for damages based on the performance of discretionary functions if the official's actions were reasonable in light of then existing law. *Atteberry v. Nocona General Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005) (*abrogated on other grounds by Kingsley v. Hendrickson*, 135 S.Ct. 2466, 2475 (2015)). To prevail in a §1983 lawsuit, a plaintiff must overcome the defense of qualified immunity. *See McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (noting that when a defendant invokes qualified immunity, the burden is on plaintiff to demonstrate the inapplicability of the defense).

The Fifth Circuit has stated that to discharge this burden, plaintiff must satisfy a two-prong test. First, he must claim that defendant committed a constitutional violation under current law, and second, that defendant's actions were objectively unreasonable in light of the law which was clearly established at the time of the actions complained of. *Atteberry*, 430 F.3d at 253; *Kinney v. Weaver*, 367 F.3d 337, 349–50 (5th Cir. 2004). These two prongs may be considered in either order. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

For purposes of qualified immunity, "[a] clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right."

*Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015) (per curiam) (citation and internal quotation marks omitted). While there need not be a case "directly on point" for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). Thus, a clearly established right may not be defined "at a high level of generality." *Mullenix*, 136 S.Ct. at 308 (citing *al-Kidd*, 563 U.S. at 742). Rather, a clearly established right must be "'particularized' to the facts of the case." *White v. Pauly*, 137 S.Ct. 548, 552 (2017) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)); *see also Wyatt v. Fletcher*, 718 F.3d 496, 503 (5th Cir. 2013) (explaining that a clearly established right "must derive from 'controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity' at the time of [the] challenged conduct").

In this case, Plaintiff has not shown that a constitutional violation was committed, nor that anything which these ECDC defendants did that was objectively unreasonable in light of clearly established law. *See Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999) ("[A]lthough inadequate medical care may, at a certain point, rise to the level of a constitutional violation, malpractice or negligent care does not."); *see also Stockwell v. Kanan*, No. 11-10107, 442 F. App'x 911, 914 (5th Cir. Sept. 28, 2011) ("An occasional missed dose of medication does not, without more, constitute deliberate indifference") (citations omitted); *and Greywind v. Podrebarac*, Civ. No. 1:10-006, 2011 WL 4750962, *8 n. 6 (D. N.D. Sept. 12, 2011) ("[G]iven the weight of existing authority, any prisoner claim for better dental care than what can be afforded by the poor and working poor in this country would face an uphill battle."). The ECDC defendants are thus entitled to qualified immunity.

For all these reasons, Plaintiff does not demonstrate that his constitutional rights were violated by seeing and being treated by a nurse instead of a dentist for a tooth ache. Attention to medical requests by staff nurses satisfies constitutional standards. *See Mounce v. Doe*, No. CIV. A. 12-669, 2014 WL 2587698, at *27 (E.D. La. June 10, 2014) (citing cases). Absent a genuine issue of

material fact, the ECDC defendants are entitled to qualified immunity on Plaintiff's claims against them. Accordingly, the Motion for Summary Judgment filed by defendants will be granted.

**VIII.    Lack of access to indigent supplies for mail/denial of access to the courts**

Plaintiff's request for indigent "legal mail" supplies appears to assert a denial of access to the courts' claim. "Detainees have a constitutionally protected right of access to the courts." *Hurdsman v. Gleason*, No. A-22-CV-254-RP, 2023 WL 2588562, at *8 (W.D. Tex. Mar. 21, 2023) (citing *Bounds v. Smith*, 430 U.S. 817, 821 (1977), *and Terry v. Hubert*, 609 F.3d 757, 761 (5th Cir. 2010)).

According to his grievance filed on February 16, 2023, Plaintiff requested an indigent legal note pad and pencils or pens so he could begin legal research in his case. [docket number 30-11 at 31]. Defendant Velasquez responded that he would be allowed nine sheets of paper and three envelopes. [*Id.*]. Three days later Plaintiff filed a grievance concerning his denial of hygiene items and mail parcels, which he asserted violated his right to communicate with the outside world. [*Id.* at 39].

The Supreme Court noted some limits on the right of access to court:

> *Bounds*[1] does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis v. Casey*, 518 U.S. 343, 355 (1996). Prison officials may place reasonable limits on the right. *See Crowder v. Sinyard*, 884 F.2d 804, 811 (5th Cir. 1989). Restrictions may be imposed for security reasons. *See Procunier v. Martinez*, 416 U.S. 396, 412 (1974), *overruled on other grounds*, *Thornburg v. Abbott*, 490 U.S. 401 (1989). "[I]ndigent inmates must be provided at state expense with paper and pen to draft legal documents ... and with stamps to mail them." *Bounds*, 430 U.S. at

---

[1] *Bounds v. Smith*, 430 U.S. 817 (1977) (*abrogated by Lewis v. Casey*, 518 U.S. 343 (1996)) (footnote added).

824–25. Prison officials, however, have to provide only reasonable amounts of such supplies. *Id.* at 825. For example, a prisoner has no basis for a civil rights lawsuit when he requested 100 sheets of paper a week and received only 75 sheets. *Felix v. Rolan*, 833 F.2d 517, 518 (5th Cir. 1987).

To prevail on a claim that his right of access to the courts have been violated, a prisoner must demonstrate prejudice or harm by showing that his ability to pursue a "nonfrivolous," "arguable" legal claim was hindered by defendants' actions. *See Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (internal quotations omitted); *Lewis v. Casey*, 518 U.S. 343, 351 (1996); *see also Johnson v. Rodriguez*, 110 F.3d 299, 311 (5th Cir. 1997). He must identify the nonfrivolous, arguable underlying claim. *Id.* There is no constitutional violation when a prisoner has time to submit legal documents in a court despite impediments caused by officials. *Richardson v. McDonnell*, 841 F.2d 120, 122 (5th Cir. 1988). A civil rights claim cannot be based on "minor and short-lived impediments to access" in the absence of actual prejudice. *Chandler v. Baird*, 926 F.2d 1057, 1063 (5th Cir. 1991).

Plaintiff has no access to the court claim related to his criminal case because Plaintiff has appointed defense counsel. As for this §1983 case, Plaintiff has had the opportunity to pursue all his claims related to his detention. Plaintiff's right to access the courts has been satisfied because he has had the opportunity to present his claims. *See Carlson v. Quada*, 295 F. App'x 623, 625 (5th Cir. 2008) ("[T]he right of access to courts does not include the right to litigate all causes of action, but applies only to the opportunity to file non-frivolous challenges to convictions or conditions of confinement."). An alleged "lack" of legal supplies has not injured his opportunity to present his claims in this Court. *See Hurdsman*, 2023 WL 2588562, at *8 (quoting *United States v. McRae*, 702 F.3d 806, 830–31 (5th Cir. 2012)) ("To state a claim based on backward-looking access-to-courts, a plaintiff must identify (1) a nonfrivolous underlying claim; (2) an official act that frustrated the litigation of that claim; and (3) a remedy that is not otherwise available in another suit that may yet be brought.").

Here, Plaintiff fails to assert that the denial or delay in providing indigent supplies resulted in any adverse legal action. Plaintiff does not even allege the denial of supplies delayed the filing of this §1983. Plaintiff was adequately able to litigate this lawsuit with whatever supplies were provided to him, and any delay in supplies did not result in missed deadlines or issues with the statute of limitations for filing this §1983. Thus, Plaintiff failed to show any prejudice in the alleged delay or denial of indigent mail supplies. Summary judgment is granted for the ECDC defendants.

**IX.    Official capacity claim against defendants**

A plaintiff can sue an individual state or municipal government official under §1983 through one of two theories of liability: (1) an individual capacity theory, or (2) an official capacity theory. See *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (discussing the importance of distinguishing between official capacity and individual capacity suits under §1983). In an individual-capacity suit, a plaintiff seeks to impose personal liability on a government official for actions he or she takes under color of state law. *See id.* at 165. By contrast, an official capacity suit against an individual government official "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." *Id.* Here, Plaintiff appears to have asserted §1983 claims against the ECDC defendants in both their individual and official capacities.

An official capacity claim is merely another way to plead an action against the entity of which the individual defendant is an agent. *See Hafer v. Melo*, 502 U.S. 21, 26–27 (1991); *Kentucky*, 473 U.S. at 165. A suit against the ECDC defendants in their official capacity is therefore a suit against their employer, Ector County, Texas. *Kentucky*, 473 U.S. at 165. Municipalities, including counties and cities, may be held liable under §1983.[2] *Hampton Co. Nat'l Sur., LLC v. Tunica County*, 543 F.3d 221, 224 (5th Cir. 2008). A §1983 does not allow a municipality to be held vicariously liable for their employees' actions on a theory of *respondeat superior*, however. *See Bd. of Cty. Comm'rs of*

---

[2] The municipal liability analysis also applies to Texas counties. *See Prince v. Curry*, No. 10-10294, 2011 WL 1659493, at * 3 n. 3 (5th Cir. Apr. 28, 2011); *Brady v. Fort Bend County*, 145 F.3d 691 (5th Cir. 1998).

*Bryan Cty. v. Brown*, 520 U.S. 397, 403 (1997); *Monell v. N.Y. Dep't of Soc. Servs.*, 436 U.S. 658, 691–95 (1978). Plaintiff must show an "underlying claim of a violation of rights," as well as "a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Cox v. City of Dallas*, 430 F.3d 734, 748 (5th Cir. 2005). The official policy requirement means that municipal liability under §1983 is limited to action for which the municipality is actually responsible." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479–80 (1986). That said, insofar as the ECDC defendants were sued in their official capacity, that portion of the suit fails, summary judgment on this claim is granted for defendants, and the Court will now analyze the claims as asserted against Ector County.

**X.    Ector County claims**

Any claims Plaintiff may have against Ector County itself should be dismissed because Plaintiff failed to identify a policy or custom as the moving force behind the alleged violations.

A county may be held liable under §1983 only for its own illegal acts, not pursuant to a theory of vicarious liability. *Connick v. Thompson*, 563 U.S. 51, 60 (2011). To succeed on a §1983 claim, plaintiff must establish, not only that an individual state actor violated his constitutional rights, but that "(1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 847 (5th Cir. 2009) (citing *Piotrowski v. City of Hous.*, 237 F.3d 567, 578 (5th Cir. 2001)). "Official [local-government] policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. at 61; *see also Peterson*, 588 F.3d at 850.

Plaintiff cites no policy that "was the moving force behind the violation of a constitutional right." *See Peterson*, 588 F.3d at 847. Plaintiff's allegations are no more than a formulaic recitation of, at best, individual acts of negligence regarding his tooth ache, his grievances, indigent supplies, and access to a free Christian Bible. These statements identify no policy, and neither state whether

the infringing policy or policies were formal written policies, decisions by policy-makers, or persistent and widespread practices. Indeed, Plaintiff's Complaint focuses on a few distinct incidents in which he was involved, rather than suggesting a persistent and widespread practice. *See id.* Plaintiff also fails to plead facts connecting the offending policy or policies to each alleged constitutional violation. Plaintiff simply presented no evidence to support this claim, and so his assertion of a constitutional violation by Ector County fails and summary judgment is granted for the ECDC defendants.

## XI.    Individual capacity claims

Individual capacity suits seek to impose liability upon a government official as an individual while official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell*, 436 U.S. at 690 n. 55. Thus, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity." *Kentucky*, 473 U.S. at 166 (citation omitted). Viewing the Complaint in the light most favorable to Plaintiff, the Court will presume that Plaintiff is bringing a claim against the ECDC defendants in their individual capacities. *See Leal v. McHugh*, 731 F.3d 405, 410 (5th Cir. 2013).

## XII.    Failure to properly supervise defendants/*respondeat superior* claims

Nowhere in his filings does Plaintiff suggest that defendants Mancha and Griffis were *personally* involved in how the ECDC defendants responded to Plaintiff's inmate requests and grievances, access to indigent supplies and to a Christian Bible, or in the medical treatment he received for his tooth ache. Thus, it appears that Plaintiff is attempting to hold defendants liable because of their position within the ECDC. But §1983 does not create supervisory or *respondeat superior* liability. *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002). Only the direct acts or omissions of government officials, not the acts of subordinates, will give rise to individual liability under §1983. *Id.* at 742 n. 6 (citing *Alton v. Tex. A & M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999). The acts of

18

a subordinate "trigger no individual §1983 liability." *Champagne v. Jefferson Par. Sheriff's Office*, 188 F.3d 312, 314 (5th Cir. 1999). There must be some showing of personal involvement by a particular individual defendant to prevail against that individual. *Id.* A plaintiff cannot make generalized allegations. *Howard v. Fortenberry*, 723 F.2d 1206 (5th Cir. 1984).

Section 1983 does not impose vicarious liability on supervisory government officials just because of a supervisory relationship with a person violating §1983. *Monell v. Department of Soc. Services of City of New York*, 436 U.S. 658, 692 (1978); *Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987). Supervisory officials may be held liable only if they (1) affirmatively participate in acts that cause constitutional deprivation or (2) implement unconstitutional policies that causally result in Plaintiff's injury. *Oliver*, 276 F.3d at 742; *Thompkins*, 828 F.2d at 303–04. Plaintiff does not allege, let alone offer any feasible factual allegations to suggest that defendants implemented an unconstitutional policy to condone allowing inmates to suffer from tooth aches, to interfere with access to the courts or to a Christian Bible, or to inadequately respond to Plaintiff's inmate requests and grievances.

Still, Plaintiff alleges that he is suing defendants Griffis and Mancha because they were responsible for the welfare of all inmates within the ECDC as the Sheriff and a senior officer, respectively. Plaintiff is, therefore, suing defendants Griffis and Mancha because of their positions and supervisory roles within the ECDC. A prisoner must sufficiently allege facts showing either personal involvement or implementation of an unconstitutional policy to make a supervisor responsible under §1983, as prison supervisors "are not liable for the actions of their subordinates on any theory of vicarious liability." *Thompkins*, 828 F.2d at 303.

The Court would note that Plaintiff has not stated a viable constitutional claim, and so he cannot state a claim for supervisory liability. *Mouille v. City of Live Oak*, 977 F.2d 924, 929 (5th Cir. 1992). Even assuming he alleged a constitutional violation, Plaintiff, however, has not asserted a non-frivolous claim against these defendants for supervisory liability. Based on the facts as alleged

by Plaintiff, he has not pleaded a viable supervisory liability claim because he has not demonstrated that these defendants were *personally* involved in any of the alleged constitutional violations. *Thompkins*, 828 F.2d at 303.

Similarly, Plaintiff has not stated a non-frivolous claim against these defendants based on the alleged implementation of an unconstitutional policy. Plaintiff has not pleaded facts demonstrating that defendants implemented an unconstitutional policy. "Supervisory liability may exist under §1983 'without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation.'" *Brown v. Cain*, 546 F. App'x 471, 475 (5th Cir. 2013) (quoting *Thompkins*, 828 F.2d at 304). All Plaintiff has alleged is that defendants have supervisory responsibility over the welfare of the ECDC's inmates. This is not enough to state a constitutional claim. Summary judgment is thus granted for defendants.

## XIII.   State-law claims

To the extent Plaintiff has any remaining state-law claims against defendants, the Court dismisses these under 28 U.S.C. §1367. Since this Court no longer has original jurisdiction because it has already dismissed all federal claims, supplemental jurisdiction over state-law claims should be declined. This is also true because of the interests of judicial economy, convenience, and fairness will be served by declining to exercise supplemental jurisdiction over any state-law claims.

In this circuit, the general rule is to decline the exercise of supplemental jurisdiction when all federal claims are dismissed or eliminated before trial. *See Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir. 1989). That said, this rule is neither mandatory nor absolute. *See id.* Rather, the Fifth Circuit reviews a district court's decision to decline supplemental jurisdiction for an abuse of discretion. *See Batiste v. Island Records, Inc.*, 179 F.3d 217, 226 (5th Cir. 1999); *see also Robertson v. Neuromedical Ctr.*, 161 F.3d 292, 296 (5th Cir. 1998) ("[D]istrict court has wide discretion"). Given that wide

discretion, this Court declines to exercise supplemental jurisdiction over any remaining state-law claims as all federal claims over which this Court had original jurisdiction have been dismissed.

### XIV.    Conclusion

The Court therefore grants the ECDC Defendants' Motion for Summary Judgment and dismisses with prejudice the majority of Plaintiff's claims against them, with prejudice. But any pending state-law claims are dismissed *without* prejudice. This case is now closed.

It is so **ORDERED**.

SIGNED this 10th day of December, 2023.

DAVID  COUNTS
UNITED STATES DISTRICT JUDGE